DECISION
{¶ 1} Relator, Charlene Petch Wrenn, has filed this action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order granting relator a two percent increase in her permanent partial disability compensation for a total of 15 percent and to enter a new order granting an eight percent increase in said compensation for a total of 21 percent.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission abused its discretion in its award of a two percent increase in permanent partial disability compensation, and that this court should issue a writ of mandamus.
 {¶ 3} Respondent-commission and respondent-employer both filed objections to the decision of the magistrate once again arguing that the magistrate erred in his conclusions of law and that this court should deny the requested writ. However, this court being persuaded that the magistrate was correct, for the reasons stated in the decision of the magistrate, we overrule those objections.
 {¶ 1} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the order of its staff hearing officer of September 12, 2002 awarding relator an increase of two percent permanent partial disability compensation, and to enter a new order awarding relator an eight percent increase in said compensation.
Objections overruled; writ granted.
BOWMAN and WATSON, JJ., concur.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 2} In this original action, relator, Charlene Petch Wrenn, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting relator a two percent increase in her permanent partial disability ("PPD") compensation for a total of 15 percent and to enter a new order granting an eight percent increase in PPD for a total of 21 percent based upon the medical reports of Drs. Cantor and Lundeen cited by the commission in its order.
 Findings of Fact {¶ 3} 1. On November 25, 1998, relator sustained an industrial injury which was initially allowed for: "crush injury to left middle finger," and was assigned claim number 98-612076. The employer of record in this industrial claim is respondent The Kroger Company ("Kroger") who is a self-insured employer.
 {¶ 4} 2. On May 1, 2001, relator filed an application for an increase in her PPD based upon the injury to the left middle finger. Following a September 5, 2001 hearing, a district hearing officer ("DHO") awarded a five percent increase in PPD for a total of 13 percent. The DHO's award was based upon the reports of Drs. Vogelstein, Cantor, and Lundeen.
 {¶ 5} 3. Dr. Vogelstein had examined relator on August 23, 2000, and found an eight percent whole person impairment for the left middle finger. Dr. Lundeen had examined relator on April 11, 2001, and found a 21 percent whole person impairment for the left middle finger. Dr. Cantor had performed a file review on July 8, 2001, and found that the left middle finger had an eight percent impairment. Apparently, in arriving at the total of 13 percent PPD award, the DHO combined the two reports indicating no percentage increase with Dr. Lundeen's opinion that the left middle finger was at 21 percent.
 {¶ 6} 4. On December 1, 2001, the commission mailed an ex parte order finding that Kroger had accepted relator's request for additional claim allowances for injuries to her left index and ring fingers. The claim was additionally allowed for: "open-fracture left index finger proximal phalanges; closed-fracture left index metacarpal; extensor mechanism injury left ring finger."
 {¶ 7} 5. In the meantime, on November 28, 2001, Dr. Lundeen again examined relator. His report, dated January 28, 2002, lists all the claim allowances for the left middle, index and ring fingers. In his introductory paragraph, Dr. Lundeen writes: "Herein, please find the report I have prepared for you in regards to Ms. Wrenn's IMPAIRMENT DUE TO HER ADDITIONAL ALLOWED CONDITIONS ONLY." (Emphasis sic.)
 {¶ 8} In his January 28, 2002 report, Dr. Lundeen separately describes in detail how he calculated impairment for the index and ring fingers.
 {¶ 9} Dr. Lundeen assigned 48 percent for total index finger impairment which translates to a ten percent hand impairment.
 {¶ 10} Dr. Lundeen assigned 47 percent for total ring finger impairment which translates to a five percent hand impairment.
 {¶ 11} Dr. Lundeen added the hand values for both fingers for a 15 percent hand impairment. A 15 percent hand impairment equates to a 14 percent upper extremity impairment which equates to an eight percent whole person impairment.
 {¶ 12} Dr. Lundeen's concluding paragraph states:
 {¶ 13} "On the basis of only the additional allowed condition(s), the medical history and all medical information available at this time, the findings on physical examination being both subjective and objective, and the 4th Edition AMA Guides to the evaluation of permanent partial impairment, the permanent partial impairment for this claim, in terms of percentage of the whole person is, in my opinion, 8."
 {¶ 14} 6. On February 6, 2002, relator filed another application for an increase in her percentage of PPD. In support, relator submitted the January 28, 2002 report of Dr. Lundeen.
 {¶ 15} 7. On May 19, 2002, bureau physician Dr. Cantor reviewed and indicated acceptance of Dr. Lundeen's January 28, 2002 report.
 {¶ 16} Dr. Cantor's impairment calculations parallel those of Dr. Lundeen for the index and ring fingers.
 {¶ 17} For the index finger, Dr. Cantor wrote: "48 finger = 10 hand"
 {¶ 18} For the ring finger, Dr. Cantor wrote: "47 finger = 5 hand"
 {¶ 19} Dr. Cantor then wrote: "15 hand = 14 UE = 8 WP."
 {¶ 20} Thereafter, Dr. Cantor wrote: "I am considering all allowances."
 {¶ 21} The medical review form that Dr. Cantor completed asks the reviewing doctor to respond to three queries. Those queries and Dr. Cantor's responses are as follows:
 {¶ 22} "A. Final Combined Whole Person Impairment for this claim Number derived by the Medical Review Physician using AMA Guides to theEvaluation of Permanent Impairment, Fifth Edition: 8
 {¶ 23} "B. Current % of Permanent Partial Award (Claim File):13%
 {¶ 24} "C. Additional % Award (A-B) [Enter 0% if less than 0%] _____0____"
 {¶ 25} 8. Following an August 5, 2002 hearing, a DHO issued an order finding that relator's "percentage of permanent partial disability has increased and is now 15%, which is an increase of 2%." The award is based upon the reports of Drs. Cantor and Lundeen.
 {¶ 26} 9. Relator moved for reconsideration of the DHO's order of August 5, 2002.
 {¶ 27} 10. Following a September 12, 2002 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states that the decision is based upon the reports of Drs. Cantor and Lundeen.
 {¶ 28} 11. On January 6, 2003, relator, Charlene Petch Wrenn, filed this mandamus action.
 Conclusions of Law {¶ 29} The issue is whether the commission abused its discretion in awarding a two percent increase in PPD rather than the eight percent increase that relator requests. Finding that the commission abused its discretion, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 30} It is clear from a careful review of the reports of Drs. Cantor and Lundeen that both doctors found that the left index and ring finger injuries together produced a whole person impairment of eight percent. It is equally clear that the left index and ring fingers had never previously been the subject of an application for PPD. Given that both relied upon doctors opined that the index and ring fingers produced an eight percent whole person impairment, it was an abuse of discretion for the commission to enter an award of a two percent increase in PPD.
 {¶ 31} Ordinarily, when the relied upon medical reports present a range of percentages, the commission does not abuse its discretion by choosing a percentage within the range of those percentages, and there is no requirement, in that situation, that the commission explain why it has selected the percentage chosen. State ex rel. Yellow Freight Sys., Inc.v. Indus. Comm., 97 Ohio St.3d 179, 2002-Ohio-5811; State ex rel. Combsv. Indus. Comm. (Aug. 16, 2001), Franklin App. No. 00AP-1145; and Stateex rel. Fletcher v. Indus. Comm. (Nov. 6, 2001), Franklin App. No. 01AP-209.
 {¶ 32} Here, the respondents argue that the range of percentages presented by the reports of Drs. Cantor and Lundeen is between zero and eight percent. Respondents argument is premised upon Dr. Cantor's response to query C where he enters a zero for an additional award. In effect, respondents' argument requires this court to ignore all but the bottom line of Dr. Cantor's report.
 {¶ 33} In the magistrate's view, Dr. Cantor's entry of a zero for an additional award is clear error. Apparently, Dr. Cantor was unaware that the prior 13 percent PPD award did not include the index and ring finger injuries. The magistrate concludes that the commission's award of a two percent increase is not within a range of percentages presented by the relied upon reports which uniformly indicate that an eight percent increase is justified.
 {¶ 34} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO order of September 12, 2002 awarding relator an increase of two percent PPD, and to enter a new order awarding relator an eight percent increase in her PPD.