DECISION
{¶ 1} Relator, Ohio Turnpike Commission, commenced this original action seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding a two percent increase in permanent partial disability ("PPD") *Page 2 
compensation to respondent, Todd A. Carpenter ("claimant"), and to enter an order denying the increase.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that Dr. Shahamat's report was the only evidence potentially supporting an increase in PPD compensation. However, because Dr. Shahamat failed to estimate a percentage of impairment attributable solely to the allowed condition, the magistrate determined that the commission could not rely upon Dr. Shahamat's report as evidence to support an increase in the PPD award. The magistrate also found that the commission's reliance on Dr. Shahamat's report was a clear mistake of law and, therefore, the commission abused its discretion when it denied relator's request that it exercise continuing jurisdiction. Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus.
 {¶ 3} The claimant has filed objections to the magistrate's decision arguing that the magistrate has interfered with the commission's legitimate fact-finding function. In essence, the claimant contends that the magistrate failed to give the required deference to the commission as fact finder. We disagree.
 {¶ 4} As correctly noted in the magistrate's decision, Dr. Shahamat expressly included nonallowed conditions in his determination of the claimant's 27 percent impairment. Dr. Shahamat failed to estimate a percentage of impairment attributable solely to the allowed condition. Therefore, the commission had no evidentiary basis for determining that the percentage of impairment attributable to the allowed condition was *Page 3 
greater than the ten percent already allowed. Because we agree with the magistrate that Dr. Shahamat's report was not some evidence upon which the commission could rely, we overrule claimant's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus ordering the commission to vacate its order awarding a two percent increase in PPD compensation to claimant, and to enter an order denying the increase.
Objections overruled; writ of mandamus granted.
 FRENCH, P.J., and McGRATH, J., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION {¶ 6} In this original action, relator, Ohio Turnpike Commission, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent Todd A. Carpenter ("claimant") a two percent increase of permanent partial disability ("PPD") and to enter an order denying the award. *Page 5 
Findings of Fact: {¶ 7} 1. On March 24, 1992, claimant sustained an industrial injury while employed as a custodian for relator, a self-insured employer under Ohio's workers' compensation laws. Relator certified the industrial claim (No. L203275-22) for "sprain lumbar region."
 {¶ 8} 2. On November 7, 1994, claimant filed an application for the determination of his percentage of PPD.
 {¶ 9} 3. In March 1995, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order denying the application. Claimant timely objected.
 {¶ 10} 4. Following a July 28, 1995 hearing, a district hearing officer ("DHO") issued an order denying claimant's objection and determining that claimant has no percentage of PPD.
 {¶ 11} 5. Claimant moved for reconsideration of the DHO's order pursuant to R.C. 4123.57.
 {¶ 12} 6. Following an October 23, 1995 hearing on the motion for reconsideration, a staff hearing officer ("SHO") issued an order finding that claimant has ten percent PPD which entitles him to an award of 20 weeks of compensation.
 {¶ 13} 7. Apparently, relator paid the award.
 {¶ 14} 8. On January 20, 2005, at his own request, claimant was examined by Ahmad Shahamat, M.D., who issued a report dated January 21, 2005. The report states:
 HISTORY: Mr. Carpenter was working in a shop and on March 24, 1992 while he was lifting a metal trash can, suddenly felt a popping noise in his lower back followed by severe pain which radiated down into his legs, especially the right leg. Following that, he was seen by emergency physicians and x-rays were taken which were normal. He *Page 6 
was given courses of physical therapy without much benefit and he consulted an orthopedic surgeon who ordered a CT scan and MRI of the lumbar. At that time, the MRI showed the presence of herniated disc in the area of L5 and S1 and there was a compression against the S1 nerve roots. Following this discovery, he was taken to the operating room and he had a diskectomy. The surgery was done in January of 1993. After the surgery, he continued to have pain. He had courses of physical therapy. It lasted for almost 2 or 3 months and gradually his pain went away. He was almost without much pain for 2 or 3 years. Then in the 3rd and 4th years, post-op meaning in 1996 and 1997, he started to have some minor pain in the lower back. It gradually started to increase. As time when by, he has more and more pain going to the back and radiating down into his right leg. Presently[,] he is working at the non-laborious type of a job. He does not have to do any lifting, pulling or pushing. All the job is behind a desk and is dealing with paper work.
 He complains of pain in the lower part of the back, goes across the back and from time to time radiates to the right leg as used to be before. The pain has the same location as the first pain that bothered him and occasionally associated with a tingling and burning sensation and numbness. The feet fall asleep more so on the right side. Occasionally, the right foot and the toes are having tingling and a pins and needles sensation especially in a certain position. Walking also produces pain if it is too long.
 * * *
 On physical examination, the lower back there is a well healed scar without any redness or hypertrophy, measuring 6 cm. in length. Walking on a flat surface is fairly normal and free of pain. Walking on toes and heels produces pain and the heel is more painful and more difficult for him to do. Straight leg raising evaluated and recorded at 45 degrees on the right side and 50 degrees on the left side. He performed a half squat and halfway could not go further down due to stiffness and pain he was encountering. On palpation of the lumbar, there is the presence of muscle spasm on the paravertebral muscles on the right and left lumbar area, associated with the local tenderness which extends to the buttock and back of the right thigh. Also, there is an increased sensitivity and tenderness of the right calf area and sensory changes of the dorsum of the right foot. Deep *Page 7 
tendon reflexes on the left side are normal. However, on the right side is very sluggish. Range of motion of the lumbar is as follows, flexion of the lumbar is recorded at 40 degrees, extension 5 degrees, right lateral flexion at 10 degrees and left lateral flexion 15 degrees.
 OPINION: Based on the history, complaints and physical findings as well as the information provided by the BWC and based on the AMA Guides, it is my medical opinion that Mr. Todd Carpenter has 27% impairment of the whole person. This percentage is based on the findings of the MRI and also being operated in 1993 as well as the recurrence of the post-op low back pain and radiation to the right lower extremity as it was before.
 {¶ 15} 9. On February 22, 2005, claimant filed an application for an increase in his percentage of PPD. In support, claimant submitted the January 21, 2005 report of Dr. Shahamat.
 {¶ 16} 10. The application prompted the bureau to obtain a medical file review from Waleed N. Mansour, M.D. On September 26, 2005, Dr. Mansour opined that claimant's current percentage of PPD is ten percent and, thus, claimant has no increase or additional percentage of PPD.
 {¶ 17} 11. On October 3, 2005, the bureau issued a tentative order finding no increase in the percentage of PPD. The tentative order states reliance upon the report of Dr. Mansour.
 {¶ 18} 12. Claimant objected to the bureau's tentative order.
 {¶ 19} 13. On October 31, 2005, at relator's request, claimant was examined by Richard N. Kepple, M.D., who reported:
 On the date of this injury, Mr. Carpenter related he was working in his usual capacity and was emptying trash cans into a front loader. At one point, the loader was quite full and he had to lift a trash can quite high in order to empty it. *Page 8 
 When he did so, he twisted his lower back and felt pain in his lower back and left leg.
 Mr. Carpenter was initially evaluated in the emergency room at Robinson Memorial Hospital on the day following this injury. He was diagnosed with a lumbar strain injury and told to apply ice/heat.
 Mr. Carpenter was then referred to an orthopedic surgeon, Dr. Lee. A CT scan of the lumbar spine in April 1992 showed right spondylolysis at L5 with mild central disc herniation to the left at L4-5. An MRI scan in May 1992 showed multi-level degenerative disc disease with minimal disc bulging at L4 and a disc bulge at L5 that was contacting the S1 nerve root sleeves. Another CT scan in July 1992 showed slight disc bulging without herniation at L4-5. A lumbar myelogram in July 1992 at the time of the second CT scan was reported to be normal. Another CT scan was obtained in October 1992, which was unchanged from the July 1992 CT scan. A discogram in October 1992 showed a moderately large right paramedian disc herniation at L5-S1 with a small central disc herniation at L4-5.
 Mr. Carpenter was referred to a neurosurgeon, Dr. Itani, and on January 7, 1993 had microdiscectomy at L4-5 and L5-S1. Following the surgical procedure, Mr. Carpenter had 11 months of physical therapy.
 CURRENT STATUS: Mr. Carpenter complained of soreness in his back with occasional spasms. He also noted occasional numbness and pain in his left leg.
 * * *
 ASSESSMENT: The history as reported by the patient, results of the physical examination, review of the available medical records, and the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, were used in the evaluation of Mr. Carpenter.
 According to the enclosed records, the allowed condition of this claim is "lumbar strain." Mr. Carpenter was previously awarded 10% whole person impairment for the allowed conditions of this claim.
 According to Table 15-3, page 384, Mr. Carpenter is placed in DRE Category I for lumbar spine impairment. On *Page 9 
examination[,] Mr. Carpenter had no clinical evidence of a lumbar strain injury. 0% whole person impairment for the allowed condition of this claim.
 CONCLUSION: 0% whole person impairment for the allowed condition of Claim No. L203275-22. This represents no increase over the previous award.
 {¶ 20} 14. Following a July 5, 2006 hearing, a DHO issued an order finding that the percentage of PPD is now at 12 percent which is an increase of two percent. Stating reliance upon the reports of Drs. Shahamat, Mansour and Kepple, the DHO explained:
 The District Hearing Officer does not exclude Dr. Shahamat's report despite the doctor's report that may have considered conditions beyond that formally allowed by the self-insured employer. The District Hearing Officer notes that the claim is only technically allowed for SPRAIN LUMBAR REGION, however, the self-insured employer has paid for surgery and temporary total disability based on a herniated lumbar spine which was never expressly allowed.
(Emphasis sic.)
 {¶ 21} 15. Pursuant to R.C. 4123.57, relator moved for reconsideration of the DHO's order.
 {¶ 22} 16. On October 10, 2006, an SHO heard relator's motion for reconsideration. Following the hearing, the SHO issued an order denying reconsideration. The SHO's order explains:
 It is the finding of the Staff Hearing Officer that the order of the District Hearing Officer be affirmed for the reason that it is supported by proof of record and is not contrary to law.
 The Staff Hearing Officer finds that there is sufficient evidence presented to establish an increase in disability to support the District Hearing Officer's 07/05/2006 order. Dr. Shahamat's report 01/20/2005 lists the allowed condition as "lumbar sprain." Dr. Shahamat has examined for the correct condition and finds on physical examination the presence of objective findings including muscle spasm on the paravertebral muscles on the right and left lumbar area *Page 10 
associated with local tenderness which extends to the buttock and back of the right thigh. There is pain with heel and toe walking and claimant could only perform half squatting due to pain and stiffness. Decreased range of motion was apparent in the lumbar area upon examination. The District Hearing Officer's finding of a 2% increase in disability is supported by "some evidence" as demonstrated by objective findings for the allowed injury and is, therefore, affirmed.
 {¶ 23} 17. On October 26, 2006, relator moved the commission to exercise R.C. 4123.52 continuing jurisdiction over the SHO's order of October 10, 2006.
 {¶ 24} 18. Following a February 22, 2007 hearing before the three-member commission, the commission issued an order denying relator's October 26, 2006 motion for reconsideration. Two of the commissioners joined in the order, stating:
 * * * [I]t is the finding of the Industrial Commission that it does not have authority to exercise continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St. 3d 454, State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St. 3d 320, and State ex rel. Gobich v. Indus. Comm. (2004), 103 Ohio St. 3d 585. The employer has failed to meet its burden of proving that sufficient grounds exist to justify the exercise of continuing jurisdiction. Therefore, the employer's request for reconsideration, filed 10/26/2006, is denied and the order of the Staff Hearing Officer, issued 10/12/2006, remains in full force and effect.
 {¶ 25} 19. On February 12, 2008, relator, Ohio Turnpike Commission, filed this mandamus action.
Conclusions of Law: {¶ 26} The main issue is whether the report of Dr. Shahamat constitutes some evidence upon which the commission can rely to award a two percent increase in PPD. *Page 11 
 {¶ 27} Finding that the report of Dr. Shahamat does not constitute some evidence upon which the commission can rely, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 28} In granting a two percent PPD increase, the commission stated reliance upon the reports of Drs. Shahamat, Mansour and Kepple. Dr. Shahamat was the only doctor who opined that claimant has a whole person impairment above the ten percent whole person impairment that formed the basis for the prior PPD award. Thus, Dr. Shahamat's report is critical to sustaining the award under challenge here.
 {¶ 29} Parenthetically, the magistrate notes that this court has repeatedly held that it is within the commission's discretion to fashion a PPD award by choosing a percentage of impairment within the range of percentages contained in the medical reports upon which it has relied.State ex rel. Core Molding Tech[n]ologies v. Indus. Comm., Franklin App. No. 03AP-443, 2004-Ohio-2639; State ex rel. Wrenn v. [The] KrogerCo., Franklin App. No. 03AP-14, 2003-Ohio-6470. In that situation, there is no requirement that the commission explain why it selected the percentage chosen.
 {¶ 30} Although this court's holdings in Core Molding andWrenn were not discussed or cited, the Supreme Court of Ohio appears to have adopted this court's rationale in State ex rel. Yellow FreightSys., Inc. v. Indus. Comm., 97 Ohio St.3d 179, 2002-Ohio-5811, at ¶ 9.
 {¶ 31} Thus, if Dr. Shahamat's report constitutes some evidence upon which the commission can rely, the commission was within its discretion to find a 12 percent impairment even though Dr. Shahamat found a 27 percent impairment and no doctor specifically found a 12 percent impairment. *Page 12 
 {¶ 32} To reiterate, without Dr. Shahamat's report, there is no evidence to support an increase in the previous award of ten percent.
 {¶ 33} Two cases cited by relator are dispositive of the main issue before this court.
 {¶ 34} In the earlier case, State ex rel. Dazier v. Indus. Comm.,93 Ohio St.3d 223, 2001-Ohio-1333, the injured worker, Paul Dazier, had an industrial claim that was only allowed for chronic obstructive pulmonary disease ("COPD"). However, Dazier additionally suffered from diabetes, hypertension, gout and ischemic heart disease. Prior to his death, Dazier filed a PPD application without supporting medical evidence. Thereafter, the commission had Dazier examined by Dr. Goyal who found that Dazier was 100 percent impaired based upon his COPD and nonallowed conditions.
 {¶ 35} Unfortunately, Dr. Goyal failed to estimate a percentage of PPD or whole body impairment attributable solely to the COPD. The commission, through its hearing officer, denied a PPD award on grounds that Dr. Goyal's report does not constitute medical evidence of PPD.
 {¶ 36} Dazier's widow filed for a writ of mandamus in this court. In denying the writ, this court found that Dr. Goyal's report was not some evidence supporting the award and there was no other evidence upon which the award could be based.
 {¶ 37} In Dazier, this court's judgment was affirmed by the Supreme Court of Ohio, stating:
 The problem with Dr. Goyal's report is his failure to estimate a percentage of permanent partial impairment or whole body impairment attributable to the COPD. His assessment of a one-hundred-percent impairment impermissibly took into account several nonallowed conditions — conditions which, according to the death certificate — clearly contributed to *Page 13 
decedent's death. Cf. State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452, 619
N.E.2d 1018. Consequently, the one-hundred-percent figure could not form the basis of an award, and there was no other percentage figure that could be used, because there was no other medical evidence.
Id. at 225.
 {¶ 38} The other dispositive case cited by relator is State ex rel.Saunders v. Indus. Comm., 101 Ohio St.3d 125, 2004-Ohio-339. William Saunders had an industrial claim allowed for a sprained right shoulder. He later sought additional allowances for two other shoulder conditions. That request eventually resulted in a lawsuit in common pleas court.
 {¶ 39} While that litigation was pending, the commission considered Saunders' PPD application. All three medical reports before the commission indicated Saunders as yet nonallowed conditions and his allowed injury but did not attribute a separate disability percentage to Saunders' allowed injury. The commission denied the PPD application, stating that "no permanent partial impairment percentage may be currently awarded for those conditions." Id. at ¶ 3.
 {¶ 40} Citing State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452, the Saunders court held that the commission did not abuse its discretion and, thus, the court denied the writ.
 {¶ 41} Waddle underpins the Dazier and Saunders cases. Waddle holds that a nonallowed condition cannot be used to advance or defeat a claim for compensation.
 {¶ 42} Again, Dr. Shahamat opined:
 * * * [I]t is my medical opinion that Mr. Todd Carpenter has 27% impairment of the whole person. This percentage is based on the findings of the MRI and also being operated in *Page 14 
1993 as well as the recurrence of the post-op low back pain and radiation to the right lower extremity as it was before.
 {¶ 43} The industrial claim is only allowed for "sprain lumbar region." Yet, Dr. Shahamat based his 27 percent impairment rating on the MRI findings, the 1993 surgery, as well as the recurrence of "post-op" low back pain and radiation of pain to the right lower extremity. Clearly, Dr. Shahamat included nonallowed conditions in his determination of a 27 percent impairment.
 {¶ 44} Dr. Shahamat tells us in his report that the MRI showed the presence of a herniated disc and compression against the S-1 nerve roots. This discovery on the MRI led to the January 1993 diskectomy. Undisputedly, the herniated disc revealed by the MRI is not an allowed condition of the claim. Moreover, the surgery necessitated by the herniated disc is not an event related to the lumbar sprain. Even the low back pain is modified in the report by the words "post-op."
 {¶ 45} Notwithstanding Dr. Shahamat's stated reliance upon a nonallowed condition to establish a 27 percent impairment rating, the SHO, in his October 10, 2006 order, endeavors to find some evidence in the report to establish impairment relating solely to the lumbar sprain. The SHO points to Dr. Shahamat's findings during the physical examination.
 {¶ 46} The SHO found that four of Dr. Shahamat's findings are related to the allowed condition: (1) muscle spasm on the peravertebral muscles on the right and left lumbar area; (2) pain with heel and toe walking; (3) pain and stiffness on squatting; and (4) decreased range of motion in the lumbar area. *Page 15 
 {¶ 47} These four findings must produce impairment above the ten percent already determined. In effect, the SHO determined that the four identified medical findings produce 12 percent whole body impairment.
 {¶ 48} Neither the commission nor its hearing officers have medical expertise. State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.,81 Ohio St.3d 56, 58, 1998-Ohio-654. Accordingly, the SHO was not competent to determine that the four identified findings in Dr. Shahamat's report produce a 12 percent whole body impairment.
 {¶ 49} In short, because Dr. Shahamat failed to estimate a percentage of impairment attributable solely to the lumbar sprain, his report contains no evidence that can be relied upon by the commission to establish an increase in the PPD award. The Dazier and Saunders cases compel this conclusion and they are indeed dispositive of the issue here. Again, without Dr. Shahamat's report, there is no evidence of an increase in PPD. Accordingly, the award of an increase in PPD must be vacated.
 {¶ 50} It is worth noting that Dr. Shahamat's report clearly indicates that a nonallowed condition was factored into his impairment rating. This is not the situation where it can be said that Dr. Shahamat failed to specifically indicate that a nonallowed condition was not factored into his impairment rating where the report otherwise indicates that the rating is based solely on the allowed condition of the claim. Thus, the commission's reliance upon State ex Consolidation Coal Co. v. Indus.Comm., 78 Ohio St.3d 176, 1997-Ohio-46, and State ex rel. The DeaconessHosp. v. Indus. Comm., Franklin App. No. 04AP-526, 2005-Ohio-1525, is misplaced.
 {¶ 51} The DHO's order of July 5, 2006, which was administratively affirmed by the SHO, suggests that the herniated lumbar spine can be viewed as an allowed condition *Page 16 
because the self-insured employer paid for the surgery (presumably the 1993 diskectomy) and for temporary total disability ("TTD") compensation during the surgery period. The DHO's suggestion is incorrect.
 {¶ 52} Additionally identified conditions that may be related to an industrial injury must be formally recognized in the claim if they are to become the basis for compensation. State ex rel. Jackson Tube Servs.,Inc. v. Indus. Comm., 99 Ohio St.3d 1, 2003-Ohio-2259.
 {¶ 53} Moreover, the Supreme Court of Ohio has repeatedly rejected the proposition that a medical condition is implicitly allowed when a self-insured employer authorizes and pays for surgery performed to treat the condition. State ex rel. Schrichten v. Indus. Comm. (2000),90 Ohio St.3d 436, quoting from State ex rel. Griffith v. Indus. Comm. (1999),87 Ohio St.3d 154, 156.
 {¶ 54} Moreover, the payment of TTD compensation for a medical condition that has never been formally allowed does not create an implicit claim allowance for that condition. State ex rel. Turner v.Indus. Comm. (2000), 89 Ohio St.3d 373.
 {¶ 55} It is undisputed that the industrial claim at issue here is only allowed for "sprain lumbar region." The self-insured employer certified the claim for that condition in 1992. Because the industrial claim (No. L203275-22) has not been additionally allowed for the herniated disc that led to the 1993 surgery and payment of TTD compensation, the commission abused its discretion to the extent that it held that Dr. Shahamat's report constitutes some evidence of PPD because the self-insured employer paid for the surgery and paid TTD compensation. *Page 17 
 {¶ 56} According to the commission, Dr. Shahamat's January 21, 2005 report indicates that claimant "aggravated" the 1992 lumbar sprain. The commission claims here that the MRI findings and the 1993 surgery are evidence of an aggravation. The commission asserts "[t]he evidence of this aggravation, alone, is sufficient to support the PPD increase." (Commission's brief at 6-7.)
 {¶ 57} Respondent's argument regarding aggravation lacks merit for the same reasons that support the conclusion that the commission abused its discretion in holding that the employer's payment for the surgery and related TTD compensation creates an implicit claim allowance for the herniated lumbar spine. The industrial claim is not allowed for an aggravation nor can it be implicitly allowed for an aggravation simply because respondent reads Dr. Shahamat's report to indicate evidence of an aggravation.
 {¶ 58} In short, finding evidence in the record or in Dr. Shahamat's report that claimant may have sustained an aggravation of the 1992 injury cannot save Dr. Shahamat's report.
 {¶ 59} One further issue needs to be briefly addressed. Relator claims that the three-member commission abused its discretion when it issued its February 27, 2007 order denying relator's October 26, 2006 motion for the exercise of continuing jurisdiction.
 {¶ 60} The SHO's order of October 10, 2006, contains a clear mistake of law because of its reliance upon Dr. Shahamat's report. Accordingly, the commission did have grounds for the exercise of continuing jurisdiction over the SHO's order of February 27, 2007 to correct the clear mistake of law. State ex rel. B C Machine Co. v. Indus.Comm. (1992), 65 Ohio St.3d 538. Accordingly, the commission's February 27, 2007 order also contains an abuse of discretion and must be vacated. *Page 18 
 {¶ 61} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its February 27, 2007 order as well as its SHO's order of October 10, 2006, and to enter an order that denies claimant's February 22, 2005 application for an increase in his percentage of PPD. *Page 1