[Cite as *State ex rel. Hupcej v. Indus. Comm.*, 2024-Ohio-5920.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donovan Hupcej, | : | |
| Relator, | : | |
| v. | : | No. 23AP-25 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 19, 2024

**On brief:** *Grubb & Associates, LPA, Natalie F. Grubb*, and *Mark E. Owens*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Donovan Hupcej, has filed an original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for permanent partial disability ("PPD") compensation, and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed the following three objections to the magistrate's decision:

[I.] The following conclusion of law is contrary to applicable law and the evidence: "Regardless of whether the commission's decision to award 0 percent PPD was based on a request for an increase of PPD or a request for a new initial determination of PPD for the newly allowed condition, the commission had some evidence to support its conclusion that there was no basis for a PPD award or increase at that time."

[II.] The following conclusion of law ignores the scope of Dr. Larsen's report, which was not to determine a [whole person impairment] for just the newly allowed conditions: "Dr. Larsen concluded claimant had a 0 percent WPI for the allowed conditions. In other words, based upon Dr. Larsen's examination, claimant had no impairment based upon the newly allowed conditions of subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein, and, thus, claimant was not entitled to either an increase in PPD or an initial PPD award for these conditions." (Emphasis added.)

[III.] The following conclusion of law is contrary to the facts and applicable law: Dr. Larsen's report "provided some evidence to support the SHO's determination."

{¶ 4} Under his first objection, relator contends the commission and the magistrate erred in treating his application "as if it is a request for an *increase* in PPD, not an initial determination as to the PPD for the newly allowed conditions." (Emphasis sic.) (Obj.'s at 2.)

{¶ 5} As observed by the commission, however, R.C. 4123.57(A) addresses both initial and subsequent applications for PPD, and the application at issue was a third (subsequent) application for PPD in which the staff hearing officer ("SHO") found no basis for either an award of PPD or an increase in PPD based on the report of Dr. Teresa Larsen, dated February 5, 2022. The commission maintains that Dr. Larsen considered whether there was any permanent partial impairment for the newly allowed additional conditions, and further argues the decision of the SHO did not address or make any determination regarding new and changed circumstances. We agree.

{¶ 6} In her report, Dr. Larsen listed all the allowed conditions, including the newly allowed conditions (i.e., subacute deep vein thromboses ("DVT") of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein). The magistrate,

noting that Dr. Larsen "concluded claimant had a 0 percent [whole person impairment] for the allowed conditions," found there was some evidence to support the SHO's determination that "claimant was not entitled to either an increase in PPD or an initial PPD award for these conditions." (Appended Mag.'s Decision at ¶ 32.) We find no error with that determination, and overrule relator's first objection.

{¶ 7} Under his second objection, relator contends Dr. Larsen's report is flawed because she examined relator for all the allowed conditions in the claim and not just the newly allowed conditions. As addressed above, however, the record indicates Dr. Larsen examined relator for the newly allowed conditions, noting that "[e]xamination of the right lower extremity finds there is no tenderness[,] * * * otherwise normal coloration of the skin[,] * * * no apparent edema or swelling of the lower extremities," and that "[m]otor strength and sensation are intact in the right lower extremity." (Report of Dr. Larsen at 2.) Dr. Larsen further found relator's "right lower extremity DVT conditions are improving based on repeat ultrasound studies, with resolution of the popliteal and external iliac DVT's," and that relator "is no longer on a blood thinner." (Report of Dr. Larsen at 2-3.)

{¶ 8} Upon review, we agree with the magistrate's determination that Dr. Larsen, based on an examination of the newly allowed conditions, found "no impairment based upon the newly allowed conditions," and therefore the commission had "some evidence to support its conclusion that there was no basis for a PPD award or increase at that time." (Appended Mag.'s Decision at ¶ 32.) Accordingly, relator's second objection is overruled.

{¶ 9} Under his third objection, relator argues Dr. Larsen's report is equivocal because she fails to estimate a percentage of impairment attributed solely to the newly allowed condition. Relator maintains that, by contrast, the report of Dr. James O'Reilly provided an expert medical opinion as to the whole person impairment solely for the allowed right lower extremity DVTs. We find no merit to this objection.

{¶ 10} As previously addressed, Dr. Larsen evaluated relator for the additional conditions and found no impairment related to those conditions. Further, as determined by the magistrate, relator's contention that the SHO "should have relied upon other medical evidence that supports an award for PPD based upon the newly allowed conditions is without merit, as it is well-established that it is within the discretion of the commission to determine which medical reports are more credible and should be relied upon." (Appended

Mag.'s Decision at ¶ 33.)  *See, e.g., State ex rel. Shambaugh v. Indus. Comm.*, 10th Dist. No. 10AP-139, 2011-Ohio-3556, ¶ 15 ("the commission has the exclusive authority to determine disputed facts, the weight of the evidence and credibility").  Accordingly, we overrule relator's third objection.

{¶ 11} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law.  We therefore overrule relator's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled*; *writ of mandamus denied*.

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donovan Hupcej, | : | |
| Relator, | : | |
| v. | : | No. 23AP-25 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 29, 2024

*Grubb & Associates, LPA*, and *Natalie F. Grubb*, and *Mark E. Owens*, for relator.

*Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 12} Relator Donovan Hupcej ("claimant") has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied claimant's request for permanent partial disability ("PPD") compensation, and to enter an order granting such compensation. Findings of Fact:

{¶ 13} 1. Claimant was injured on June 15, 2015, in the course of and arising from his employment with respondent Scherba Industries Inc. ("employer") when he positioned and lifted a ladder while employed as a vehicle graphic wrap installer. His workers' compensation claim was allowed for the following conditions: unilateral inguinal hernia,

right; unilateral inguinal hernia, left; adjustment disorder; mood disorder due to physiological condition with major depressive disorder, chronic pain syndrome; and subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein.

{¶ 14} 2. On March 7, 2017, claimant filed his initial C-92 application for determination of percentage of PPD. At that time, the allowed conditions in the claim were unilateral inguinal hernia, right; unilateral inguinal hernia, left; adjustment disorder; mood disorder due to physiological condition with major depressive disorder. In a January 25, 2018, order, the Ohio Bureau of Workers' Compensation ("BWC") found claimant to have a 14 percent PPD.

{¶ 15} 3. On January 11, 2019, claimant filed a first subsequent C-92 application. At that time, the claim was still allowed for the same conditions allowed at the time of his first C-92 application. On July 26, 2019, a district hearing officer ("DHO") found claimant to have a 17 percent PPD, which represented a 3 percent increase from the prior PPD award. The DHO found that the award represented a 10 percent PPD for the allowed psychological conditions and a 7 percent PPD for the allowed physical conditions.

{¶ 16} 4. On August 27, 2019, claimant filed a second subsequent C-92 application, which indicated it was being filed for the newly allowed condition of chronic pain syndrome groin/pelvic area. On March 5, 2020, a DHO found claimant to have a 22 percent PPD, which represented a 5 percent increase in PPD.

{¶ 17} 5. On August 27, 2020, the claim was allowed for subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein.

{¶ 18} 6. On August 10, 2021, claimant filed a third subsequent C-92 application, which indicated it was being filed for the newly allowed conditions of subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein.

{¶ 19} 7. In a February 5, 2022, report, Teresa Larsen, D.O., found the following: (1) there is no tenderness of the right lower extremity; (2) there is no apparent edema or swelling of the lower extremities noted; (3) there is no calf or thigh tenderness; (4) Homan sign is negative; (5) right hip, knee, and ankle range of motion is normal; (6) motor strength

and sensation are intact in the right lower extremity; (7) the right lower extremity DVT conditions are improving based on repeat ultrasound studies, with resolution of the popliteal and external iliac deep vein thromboses on last study, and he is no longer on a blood thinner; and (8) the whole person impairment ("WPI") for the allowed conditions in the claim is 0 percent.

{¶ 20} 8. In a March 7, 2022, report, James O'Reilly, D.C., found that claimant demonstrates a WPI of 19 percent solely for the allowed right lower extremity deep vein thromboses of the claim.

{¶ 21} 9. A hearing before a DHO was held, and in an April 19, 2022, order, the DHO found the following: (1) claimant does not have a percentage of PPD above that which was previously awarded; (2) the decision is based on the February 5, 2022, report of Dr. Larsen, and the March 7, 2022, report of Dr. O'Reilly. Claimant appealed.

{¶ 22} 10. A hearing was held before a staff hearing officer ("SHO"), and in a June 15, 2022, order, the SHO affirmed the DHO's order and found the following: (1) the DHO's order is supported by proof of record and is not contrary to law; (2) there is no basis for a percentage of permanent partial award or increase at this time; and (3) the decision is based on the February 5, 2022, report from Dr. Larsen.

{¶ 23} 11. Claimant requested reconsideration of the SHO order, which the commission denied on August 18, 2022.

{¶ 24} 12. On January 17, 2023, claimant filed a petition for writ of mandamus, requesting that this court issue a writ of mandamus ordering the commission to vacate its order that denied claimant's request for PPD compensation, and to enter an order granting such compensation.

Conclusions of Law and Discussion:

{¶ 25} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 26} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 27} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 28} Pursuant to R.C. 4123.57(A), a determination of the percentage of an employee's permanent disability must be based on medical or clinical findings that are reasonably demonstrable. *State ex rel. Campbell v. Indus. Comm.*, 10th Dist. No. 12AP-914, 2013-Ohio-4052, ¶ 32; *see also* Ohio Adm.Code 4121-3-15(E)(1). The claimant bears the burden of establishing a proximate causal relationship between a workplace injury and resulting disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). The BWC has adopted the AMA Guides to the Evaluation of Permanent Partial Impairment, Fifth Edition, for use by medical examiners and subsequent adjudicators of PPD claims.

{¶ 29} This court has repeatedly held that it is within the commission's discretion to fashion a PPD award by choosing a percentage of impairment within the range of percentages contained in the medical reports upon which it has relied. *State ex rel. Chrysler LLC v. Indus. Comm.*, 10th Dist. No. 08AP-1005, 2010-Ohio-85, ¶ 54, citing *State ex rel. Core Molding Technologies v. Indus. Comm.*, 10th Dist. No. 03AP-443, 2004-Ohio-2639; *State ex rel. Wrenn v. [The] Kroger Co.*, 10th Dist. No. 03AP-14, 2003-Ohio-6470. In that situation, there is no requirement that the commission explain why it selected the percentage chosen.

{¶ 30} R.C. 4123.57(A) requires an application for an increase in PPD to be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." *See* Ohio Adm.Code 4123-3-15(B)(1). Establishing new and changed circumstances entails demonstrating that "conditions have changed subsequent to the initial award," and not simply evidence that was "newly acquired." *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991), citing *State ex rel. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979).

{¶ 31} In the present case, claimant argues that the commission's decision to award 0 percent PPD was based on the erroneous determination that his request was for an increase of PPD instead of a request for a new initial determination of PPD for the newly allowed condition of subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein. Claimant asserts that he was not previously awarded PPD for this condition; therefore, the determination of the percentage of PPD was not based on medical or clinical findings that are reasonably demonstrable. Claimant contends that Dr. Larsen's February 5, 2022, report does not examine and render a WPI percentage specifically for the newly allowed condition and, therefore, wrongfully treats the August 10, 2021, C-92 application as if it is a request for an increase in PPD and not an initial determination as to the PPD for the newly allowed condition.

{¶ 32} Claimant's argument is not persuasive. Regardless of whether the commission's decision to award 0 percent PPD was based on a request for an increase of PPD or a request for a new initial determination of PPD for the newly allowed condition, the commission had some evidence to support its conclusion that there was no basis for a PPD award or increase at that time. The SHO relied upon the February 5, 2022, report from Dr. Larsen.  In her report, Dr. Larsen found claimant had no tenderness in the right lower extremity; no edema or swelling of the lower extremities; no calf or thigh tenderness; negative Homan sign; normal right hip, knee, and ankle range of motion; intact motor strength and sensation in the right lower extremity; and improving right lower extremity DVT conditions based on repeat ultrasound studies. Dr. Larsen concluded claimant had a 0 percent WPI for the allowed conditions. In other words, based upon Dr. Larsen's examination, claimant had no impairment based upon the newly allowed conditions of subacute deep vein thromboses of right external iliac vein, right common femoral vein, right femoral vein, and right popliteal vein, and, thus, claimant was not entitled to either an increase in PPD or an initial PPD award for these conditions.

{¶ 33} Furthermore, claimant's arguments that the SHO should have relied upon other medical evidence that supports an award for PPD based upon the newly allowed conditions is without merit, as it is well-established that it is within the discretion of the commission to determine which medical reports are more credible and should be relied

upon. The SHO found Dr. Larsen's report credible, and it provided some evidence to support the SHO's determination. For these reasons, the commission did not abuse its discretion, and its order was not contrary to law.

{¶ 34} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.